and we have both counsel on video. Can you hear us? Okay? Yes. Good morning, Your Honor. Should I begin? Yes. Whenever you're ready. All right. Good morning, Your Honors. This is, you know, Lipkin on behalf of the petitioner on the cases before the court. I believe to determine the issue of the petitioners well founded fear of persecution and feasibility of relocation. The immigration judge or I. J. Um, did ultimately find the petitioner credible. Um, but as we argue, opined erroneously that he did not establish that the members of the ruling parties in the Punjab. Can I ask you about that? He said that he found him credible. That's not entirely true. It's sort of a partial credibility determination because he found some of the testimony incredible, implausible. He he determined that he that over all the testimony was credible. Um, and then he outlined, I believe, two points of concern that he deemed implausible. But for a coach and credibility finding, um, it can't be wishy washy. It's either credible or not credible, and he did not make an adverse credibility finding. And thus the board, um, had to adopt that decision, and it did under the matter of Burbano case. And thus, this court has to find the petitioners testimony to be credible again. There was no, um, cogent, adverse credibility finding. Well, he says it. Um, this is a day or 51. Despite the fact that a portion of his testimony is implausible, the court are and despite the fact that there's two or three inconsistencies, the court does does find that overall, his testimony is not substantially incredible. I'm not entirely sure what that means. Like, it doesn't say he's credible. Uh, but it but there is no articulated adverse credibility finding. And under, um, the B. I. A. Case law of failure to state an adverse credibility finding, um, must be deemed to be a credible finding. Well, I okay. So let's go back. So if you go back a page today are 50, he says the part that is implausible in this case is that the respondent then continued on to state that after he went into hiding and then left and went to the United States, members of the Congress Party then went to his house and asked about him. Why isn't that adverse credibility? I mean, he specifically says that that's implausible. Well, on the one hand, we attack that finding in the opening brief and down below before the board because the I. J. Failed to provide any evidence in the record to substantiate that opinion. It's purely based on speculation and conjecture. There's nothing inherently implausible by that claim, given that the petitioner had credibly testified regarding two attacks, the last one by the Congress Party members. Um, it is just as plausible to assume that he was known in the village by these people, and therefore they would know where he lives. Could I interrupt you? It seems like there are some things that the I. Leave. It seems one of these is the attack afterward. It seems like part of it was the weapons that he was attacked with in the first attack. There are certain things that the I. J. Says I don't really believe these air plausible. It seems like you want to argue with that, but let's just take that as given. Do you need those pieces of his testimony to support the pieces of your claim? I'm if you're asking, did the petitioner establish he was beaten by members of the B. J. P. On January the 5th. Um, like whether or not it was hockey sticks. If he was beaten, is it enough? We don't need it to be hockey sticks, right? So it seems like you're you may be able to go forward with your argument with the especially true in light of the fact that he sustained grievous injuries requiring medical treatment. Um, the I. J. Didn't find that remarkable or implausible, and therefore that aspect. I agree with you on that. I agree with you on that. And so where did the I. J. Find? Can you point me in the record where the I. J. Found that this was done by Congress party or the P. J. P. Party? Because that seems to be where the discrepancy is because the B. I. A. Certainly didn't interpret it that way. I mean, would you agree with that? The B. I. A. Interpreted the I. J. S. Opinion to be that this wasn't done by the Congress party or the P. J. P. Party? Well, let me break that apart. So the B. I. A. Cited matter of bravado, as I mentioned earlier, and therefore it adapted the entirety of the judge's decision as if it was its own. So putting that aside, I go then to the I. J. S. Decision. Um, it's a weird decision because on the one hand, he says, um, the testimony is credible, despite those two inconsistencies. And then, um, uh, that he established. Um, let me see. One moment. I just wanted to give well, and let me let me point you to a couple that if you go to A. R. 54, the I. J. Says accordingly, the evidence is insufficient to show that these attacks occurred by the government of India or that the government of India agreed with these attacks or perpetuated these attacks or encouraged these attacks. Okay, so go ahead. Okay, so I found on A. R. 53. The I. J. Expressly says the petitioner established past harm rising to the requisite level on account of his undermining his own findings. Well, hold on. But that's not inconsistent. He could be attacked because of his man party membership. The question here is, was it done by a by a government official or someone that the government wouldn't wouldn't control? I think the answer to that question lies in the petitioner's credible testimony that he had approached the police for assistance and protection, and the police rebuffed him. And well, that that's a tough one for you, because both the I. J. And the B. I. A. Rejected that as as grounds for the asylum claim. So where is it that the I. J. Can you point me to a specific A. R. Citation where the I. J. Said this was there? This was the government that was acting, or it was at least a member of the party that was acting. The I. J. Did not find that, but his earlier. Oh, wait. Why are you saying that at the top of A. R. 53? The I. J. Says that the I. J. Says it would further find it would further find that the reason, according to the respondent's testimony and other evidence in the record, was that he was beaten by B. J. P. Party members and Congress Party members on these two separate occasions, and it's because he was a member of the man party. Yes, and I mentioned that at A. R. 53 that, um, at first, the I. J. Made that finding, and then he worked his way to undermine his own fight. Um, the fact that he found that the petitioner was harmed on account of the Mon party membership leads us to conclude that he was attacked by people opposed to that. His own credible testimony indicated that people who opposed this month party membership were members of the B. J. P. The centrally ruling party to the current time and the Congress Party. That was the former ruling party in the plunger. Um, so the contradiction here lies in the I. J.'s own, um, determinations where he had analyzed that the petitioner did establish harm, not just harm because of his Mon party membership. He specifically added to the requisite level, which comes back to your question, Your Honor. Did it matter whether the mention of hockey sticks and baseball bats was to be calculated in the harm he received? Clearly, the immigration judge found that whatever harm by whatever means was, um, used on the petitioner did rise to the is conclusive on that. I might save the last 30 seconds. Unless you have a question. Thank you, Counsel. We'll hear from the government morning, Your Honor's ranch are on on behalf of the U. S. Attorney General. May it please the court. I would first in discussing credibility. Um, I think what the agency did here was the agency found reluctantly that overall, the testimony was credible. However, credibility does not equate to persuasiveness and burden of proof. And I think that's what the immigration judge was really getting at here. Just because you have testimony indicating that two attacks occurred doesn't mean you've persuasively proven that those the Congress party will be. Can you address Judge Friedland's reference at a R 53 where the I J says it would further find so that I J would find that the reason, according to the respondents testimony and other evidence of record that he was beaten by BJP party members in Congress party members on those two separate occasions is because he was a member of the man party. What isn't that a finding? Why isn't that enough to say that's a finding by the I J that he was beaten by members of the BJP party and the Congress party? The next sentence, I think, is crucial because the context of the whole decision really reflects what the I J's intent here is. It says the respondents evidence in this regard is not strong. And then the I J goes on to strong. But then the I J. But then the I J ends. Nevertheless, the court would find that although this is a close issue, the respondent has met his burden that this was on account of his political opinion. I don't understand how the weaknesses in between can be seen to not to totally take away from the sentence before and after the weaknesses because the I J is saying it was because of politics. I think that back to the difference between the nexus portion of this analysis and the past persecution portion. Those are actually two separate analyses. The nexus is obviously is the conduct committed on account of the man party. And as I think your honor, Judge Nelson said earlier, these individuals could have committed this against him because of his man party membership. But the identity and the affiliation of those individuals is still unknown because the pages that these there's no evidence. These individuals were willing participants. Yeah, well, it's 54. I wanted to reference that because at 54 the I J then says there's no evidence that these individuals acted on behalf of the Congress party or the BJP party or the government of India. Is that what? Yes, that is exactly what I'm what I'm referencing. And and throughout the entirety of the I J decision, the I J refers to them as individuals as not willing participants, as unknown vigilante assailant. How do you comport that with 53? I actually agree with you on the conclusory statement of that for that first paragraph on 53 that it does only reference the political opinion. But there's this stray sentence that seems inconsistent with the rest of it. What do we do with that? I think it's the sorry. Go ahead, Your reason that it is a bit confusing. The judge make the I J makes it clear that he's referencing, um, according to the respondents testimony and other record evidence. So the I J is referencing again the fact that the respondent himself seems to believe that these were BJP members and Congress party members. But the entirety of the I J decision and the board decision makes very clear that the agency's intent is not to ascribe these individuals with automatic opposing party membership. The board says they are alleged private persecutors, unknown private individuals, references the phrase private individual individuals. The board says that, but the board can't make its own credibility determinations, right? So the board can only say that if it's interpreting the I J correctly, and it's not clear it was. I think that based on the entirety of the I J's decision, it was because the I J makes it very clear with the relocation analysis that if you are unable to demonstrate past persecution, it is incumbent on the applicant, the asylum applicant to then demonstrate whether he can safely, um, whether it be unsafe or unreasonable to relocate. But the I J said he did meet his burden regarding past persecution. Well, that was the alternative analysis. Even if he met past persecution, the I J's decision was based on the presumption of a well founded fear of persecution based on the individualized analysis of Sting's personal circumstances, as well as the country conditions evidence. But wouldn't that have been a mistake under Carr and Whitaker if he actually was beaten up by party members who were part of the government, whose parties were part of the government? And can I add something here? Because is it possible that since this case, since his decision came down before Carr, that he's doing a two part analysis? In other words, that he's determining that it was a party problem. But he says, however, the court will find after he says, you know, that although this is a close issue, the respondent has met his burden, that this was on account of his political opinion. He also says the affidavit submitted on the respondent's behalf also state that these individuals threatened the respondent, told him to join their party, and the court will find that he has met his burden regarding this prong of past persecution. But his next sentence says, however, the court will find that the respondent has not met his burden to show that these actions were done by the government or someone the government is either unwilling or unable to control. So is it possible that this analysis was done prior to Carr and that he's doing a two prong approach here? This analysis was done prior to Carr. And the fatal flaw with Kawor is that the agency never made a determination specifically as to government sponsored conduct. The petitioner made a made a argument in that case that it was government sponsored. The agency pretty much ignored it and didn't do a thorough analysis. We don't have that flaw here. Even though the IJ's decision was pre-Kawor, the board does cite to Kawor in its decision as a PDF citation in order to distinguish the fact that in this particular case, the agency did conduct an analysis of the government conduct or nongovernment conduct, whereas in Kawor that was not done and there was a remand as a result of that. And also in regards to the Singh case, the Singh case, I believe, had an issue with the individualized analysis for relocation, which again, we don't have that flaw here, where we have a specific analysis with regards to all the country reports and Singh's young age health and education and his ability to relocate to eight different states outside of Punjab that have plenty of Sikhs living there safely and reasonably. So again, Oh, sorry, I didn't mean to cut you off. But I did have a I wanted to sort of bring it back to Judge Friedland's question, which is she asked about the BIA not being able to make specific findings of fact, which is, I assume the government agrees with that. The BIA cannot make those. Is there a standard of review? Say that we were to find that the IJ's factual findings were ambiguous. Is there any deference that we would owe to the BIA's interpretation of the IJ's factual findings? Or do we look at that de novo? Or is that? I don't know that we have a case on this, by the way. I mean, I don't want to ask an impossible question. I just I wasn't able to find anything, any scenario that was similar. I'm not entirely sure, Your Honor. I mean, I think the point here, though, is that the agency wasn't ambiguous, and the board seems to wholeheartedly agree with that. I mean, the standard for this court, obviously, is the substantial evidence standard. And the court has to look at all the record evidence to see if it compels reversal of the agency's finding. And given the lengthy decision by the immigration judge really hammering home that we don't have enough evidence of government conduct, and the board agreeing with that in multiple locations in its decision, I would argue that it's nonambiguous. And the Supreme Court in the Garland versus Ming Dai case explained that credibility alone is not dispositive of persuasiveness and legal sufficiency. And I think that's really... Let me, just to put a finer point on it, if we don't agree with you that it's unambiguous, would you agree that we need to remand it for clarification? So if the factual findings of the immigration judge... We think that the IJ was inconsistent. Do we need to say, Hey, look, this could be interpreted this way, this could be interpreted the other way. We don't know. You need to tell us what you really were doing. Or can we defer to the BIA's interpretation of potentially inconsistent statements by the IJ? I mean, obviously you win if we find that the IJ was unambiguous in finding that the man party... My question is that middle ground. If we can't come to a conclusion there, what do we do? Is there a way that you still win, or do we need to remand? I would say, Your Honor, even if there is some ambiguity with regard to that part of the analysis, you still have the relocation analysis, and that is a significant portion of the decision because the immigration judge goes through a significant number of reports. So this is not a... Although unable and unwilling is a dispositive analysis generally, there is a reason the regulations also provide this other portion of the analysis because even if this individual has demonstrated past persecution, DHS has the opportunity to rebut the well founded fear presumption. Yeah. Can I ask about that though? So if he was attacked by party members who were part of the ruling party of the government, then under Carr and Singh v. Whitaker, wouldn't he be entitled to a presumption that that's the government throughout the country and he can't relocate? And where is the presumption in this analysis that the agency did? I don't believe that... Well, in the board's decision, and I believe also in the agency's, in the IJ's decision, the board in the footnote number one says, nor did the immigration judge Aaron concluding in the alternative that DHS had rebutted any presumption of a well founded fear citing to the regulation, which also includes that presumption of reasonableness that your honor is referencing. But again, that presumption is not concrete, it can still be rebutted. And the evidence indicates that Singh had no... A man worker, he had no leadership role in the party, he did not have a criminal record, and he spoke Punjabi and he was able to... He would be able to relocate just like the millions of others Punjabis had relocated outside of... Or Sikhs had relocated outside of Punjab. So again, just because that presumption is present in the regulations does not mean that it's concrete or a per se final outcome. So again, I understand the ambiguity in the IJ's decision on certain sentences, but I think overall, the context of the agency decision is quite clear in this case. And I see I'm over my time, so I apologize, your honors, but I'm willing to answer any further questions. Thank you for answering our questions. Other questions? No one. Okay, we took the government over time, so let's give you a minute for rebuttal. I think it's a little more than you had. Yes, your honors. So I just feel AR 53 is dispositive to establish that the IJ overall determined that the petitioner was credible and was harmed on account of his non party membership. And he says at the top of that page, it would further find that the reason according to the respondent's testimony and other evidence of record, that he was beaten by BJP members and Congress party members because he was a member of the Mon party. And then he ends that paragraph with, nevertheless, the court would find that although it's a close issue, the respondent has met his burden, that this was an account of his political opinion. So to parse out the other sentence in which he says, well, there wasn't a lot of proof that it was Congress and BJP party members, was refuted by his own reasoning that the only reason petitioner was harmed was on account of his political opinion. And those were the two political parties that harmed him. Thank you. Thank you both sides for the helpful arguments. This case is submitted.
judges: FRIEDLAND, NELSON, Cardone